## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.

FILED

Nov 09 2016, 6:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of C.B., a Child
alleged to be Delinquent,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

November 9, 2016

Court of Appeals Case No.
32A01-1604-JV-873

Appeal from the Hendricks Superior
Court.
The Honorable Karen M. Love,
Judge.
Cause No. 32D03-1512-JD-337

**Barteau, Senior Judge**

# Statement of the Case

C.B. was adjudicated a delinquent for committing an act that would be intimidation,[1] a Level 6 felony, if committed by an adult.  C.B. now appeals, contending that the evidence is insufficient to support his adjudication.  We affirm.

# Issue

The sole issue presented in the appeal is whether there is sufficient evidence of a prior lawful act to support C.B.'s adjudication.

# Facts and Procedural History

In November of 2015, Christine Pate was the manager of the Woodland Trace Mobile Home Community in Plainfield, Indiana.  Part of Pate's duties were to oversee the tenants and the properties, and to ensure that the children living there were complying with park rules.  During the four to five years she had held this job, Pate had many encounters with C.B., who was twelve years old in November of 2015.  She described many of the interactions with him as addressing general "orneriness."  Tr. p. 43.  On one recent occasion, however, C.B. was "caught defacing a light pole with a spray can of paint."  *Id.*  After Pate brought C.B.'s parents to the scene, C.B. yelled at Pate that "this is not over until I say it's over."  *Id.*  C.B.'s mother chased him around the pole,

---

[1] Ind. Code § § 35-45-2-1(a)(2) and (b)(1)(A) (2014).

"smacking at him." *Id.* Other damage had occurred in the park, but could not be directly attributed to C.B.

[4] C.B. testified that he was getting in trouble with Pate for "doing fun stuff" with his friends. *Id.* at 53. He thought that she was mean and that she had told him to stop having fun "about 500 times." *Id.*

[5] On November 18, 2015—a Wednesday, which was Pate's day off—at around 4:00 p.m., Pate was at home watching television. C.B. had gotten off the bus and went directly to Pate's trailer. Pate described on direct examination what happened next as follows:

> It was a Wednesday, it was after 4:00 Wednesday so usually my day off. [C.B.] came to my home banged on my door, not knocked, banged after school. I opened the door and he stands there screaming at me, I know what you're doing, I know what you're doing, you're getting rid of X—I cannot say the tenants [sic] names—then you're going to get rid of X and then us. He said I'll get a gun and come shoot you. . . . I told him to get off my deck, not once but twice I told him to get off my deck. He walked down the steps, turned around and gave me his dead stare and then walked down the street to his house.

*Id.* at 42-45.

[6] The following exchange took place on cross-examination:

> Q: You said that [C.B.] said I know you are evicting X and then Y and then us and you said the first part of that statement is true, what do you mean by that?
>
> A: We did evict someone out of the park that he was talking about.

Q:     And this was on November 18th?

A:     It was on a Wednesday, the date, I'll say it's the 18th, I don't remember the exact date. It was after 4:00 when the bus let the kids out.

*Id.* at 46.

[7]     On December 18, 2015, the State filed a delinquency petition against C.B. alleging that he had committed the crime of intimidation, a Level 6 felony if committed by an adult. At the conclusion of the fact-finding hearing on March 14, 2016, the juvenile court found that the State had proved beyond a reasonable doubt that C.B. had committed the offense, but took the matter under advisement because the charging document specified the wrong victim. On April 4, 2016, the juvenile court entered a true finding of intimidation and placed C.B. on supervised probation for six months. C.B. now appeals.

## Discussion and Decision

[8]     When the State alleges that a juvenile should be adjudicated a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that offense beyond a reasonable doubt. *Al-Saud v. State*, 658 N.E.2d 907, 908 (Ind. 1995). On appellate review of a challenge of the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We will consider only the evidence most favorable to the judgment and reasonable inferences therefrom. *J.B. v. State*, 748 N.E.2d 914, 916 (Ind. Ct. App. 2001). We will affirm if the evidence and

those inferences constitute substantial evidence of probative value to support the judgment. *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998).

[9] The charging document alleged that C.B. "did communicate a threat to another student, with the intent that the other person be placed in fear of retaliation for a prior lawful act, to-wit: stated 'I know what you are trying to do evicting Alex in Lot 5 and trying to get rid of Heather Neal in Lot 28 and us. . . I will get a gun and come back and shoot you.' The threat was to commit a forcible felony." Appellant's App. p. 16. The juvenile delinquency report submitted to the juvenile court correctly identified the victim as Pate and not another student. *Id.* at 6. The report further alleged that "Pate stated that she was planning on evicting the Lot 5 resident due to lot violations but the others that [C.B.] thought she was trying to evict was incorrect." *Id.*

[10] The State was required to prove beyond a reasonable doubt that C.B. communicated a threat to Pate with the intent to place Pate in fear of retaliation for a prior lawful act. Ind. Code § 35-45-2-(a)(2) & (b)(1)(A). To establish that C.B. committed intimidation, the State must prove that the legal act occurred prior to the threat. *C.L. v. State*, 2 N.E.3d 798, 800 (Ind. Ct. App. 2014). If the threat does not place the person in fear of retaliation for a prior lawful act, then the conviction or adjudication cannot stand. *Id.*

[11] Considering the evidence most favorable to the adjudication, there is evidence of a threat to commit a forcible felony communicated to Pate with the intent to place Pate in fear. The issue here is whether the evidence is sufficient to

establish that the lawful act occurred *before* the threat was made. The trial court, as fact-finder, correctly concluded that the State presented sufficient evidence that the lawful act occurred before C.B.'s threat was made.

[12] In *Roar v. State*, 52 N.E.3d 940 (Ind. Ct. App. 2015), *trans. granted*, 54 N.E.3d 371 (Ind. 2016), *sufficiency adopted and incorporated by reference*, 54 N.E.3d 1001 (Ind. 2016), the threat, which placed the landlord in fear, was communicated to her after the defendant saw the landlord place an eviction notice on the defendant's sister's door. Therefore, the threat came after and in retaliation for the prior lawful act—placing the eviction notice on the tenant's door.

[13] Likewise, here, evidence was presented that C.B.'s threat came after a prior lawful act. The delinquency report stated that Pate was planning on evicting the Lot 5 resident. Appellant's App. p. 6. Her testimony at the fact-finding hearing was that C.B. screamed that he knew "what you're doing, I know what you're doing, you're getting rid of X. . . ." Tr. p. 43. On cross-examination, Pate stated that "we did evict someone out of the park that he was talking about." *Id.* at 46. The record reflects that Pate, in her capacity as manager of the mobile home community, had made the decision to evict the tenants in Lot 5, referred to by C.B. in his subsequent threat, for lot violations. Although the record does not clearly establish precisely when the eviction took place, the record does reflect that the decision to evict had been made and that C.B. was aware of that decision prior to making his threat. Therefore, the evidence is sufficient beyond a reasonable doubt to establish a prior lawful act. Consequently, we affirm the trial court's adjudication.

# Conclusion

[14] In light of the foregoing, we affirm the trial court's adjudication of C.B. as a delinquent child.

[15] Affirmed.

Brown, J., and Altice, J., concur.